### GOODWIN, INC v ORSON E COE PONTIAC, INC

1. CONTRACTS—INTENT OF PARTIES—PAROL EVIDENCE.

   A contract for the lease of land "owned by" the lessor is sufficiently clear and unambiguous as meaning present ownership to preclude extrinsic parol evidence to determine the intent of the parties, and the admission of extrinsic parol evidence to determine the intent of the parties is error.

2. EVIDENCE—PAROL EVIDENCE—OBJECTIONS—APPEAL AND ERROR.

   The issue of the impropriety of the admission of extrinsic parol evidence introduced to interpret a written contract may be raised on appeal even though there was no objection to its admission at trial, because such evidence is legally ineffective in the substantive law.

3. TRIAL—PAROL EVIDENCE—LIMITED EVIDENCE—OBJECTIONS.

   The opposing party may have considered that improper parol evidence was admitted for all purposes where the limited purpose for which it was proffered (an alleged defense of misrepresentation) was not disclosed at trial; because it is determined on appeal that the parol evidence should not have been admitted, a new trial is ordered to afford opportunity to admit proper evidence by appropriate means and so that the trial judge will not be found in error for allowing admission of evidence that was not objected to at trial.

Appeal from Kent, George V. Boucher, J. Submitted Division 3 April 6, 1972, at Grand Rapids. (Docket No. 11135.) Decided November 27, 1973. Leave to appeal granted, 389 Mich 766.

Complaint by Goodwin, Inc., against Orson E. Coe and Orson E. Coe Pontiac, Inc., for breach of contract. Counter-complaint for breach of contract.

REFERENCES FOR POINTS IN HEADNOTES

[1] 30 Am Jur 2d, Evidence § 1016.
[2] 5 Am Jur 2d, Appeal and Error § 553.
[3] 53 Am Jur, Trial § 136.

Judgment of no cause of action against Goodwin, Inc. Judgment in favor of Orson E. Coe and Orson E. Coe Pontiac, Inc., on the counter-claim. Plaintiff appeals. Reversed and remanded.

*Warner, Norcross & Judd* (by *William K. Holmes*), for plaintiff.

*Cholette, Parkins & Buchanan* (by *Edward D. Wells*), for defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and BORRADAILE,* JJ.

HOLBROOK, J. Plaintiff, Goodwin, Inc., prior to 1967, operated the sole Pontiac dealership in Grand Rapids, Michigan, under the then corporate name of Goodwin Pontiac Company. In the fall of 1966, the location of the dealership in Grand Rapids was no longer the most advantageous and the business was not as profitable as it might have been. Mr. Goodwin, the principal of the plaintiff corporation, was interested in a move of facilities or withdrawal as a dealer. The individual defendant, Orson E. Coe, had for some years operated a Pontiac dealership, along with other interests in the City of Ionia. He was interested in a move into the Grand Rapids market. A series of negotiations, commencing in October 1966, culminated in the execution of a written buy-sell agreement, dated February 8, 1967. This agreement was written by Mr. Coe and Mr. Goodwin, each checking the form and substance of the provisions after each individual had written it. Among other things, the agreement provided transfer of the plaintiff's assets to either Mr. Coe or Coe Pontiac, Inc., a transfer of

---

* Former circuit judge and now probate judge, sitting on the Court of Appeals by assignment.

the Pontiac franchise, and the construction by the plaintiff of a new facility on 28th Street at the City of Grand Rapids southern limits on property owned by plaintiff. This facility was to be leased back to one of the defendants with certain options as to term and purchase.

On October 7, 1967, the defendant corporation, which was organized to assume the buyer's obligation under the contract, took over the plaintiff's dealership under a new franchise from the Pontiac Motor Division. A dispute arose over the property description to be inserted in the lease for the proposed new 28th Street facility. There ensued a series of negotiations and delays until, finally, in January 1968, each party had refused to execute the other's proposed form of the lease.

Plaintiff filed its complaint on February 21, 1968, alleging breach by the defendants of the agreement to enter into the lease as part of the contract for sale and purchase of assets of the plaintiff's automobile dealership. It sought damages and specific performance, or in the alternative, damages, rescission, injunction, an accounting, and a receivership. Defendants answered and filed a counter-complaint alleging breach of contract and seeking damages, specific performance, and injunction. On September 16, 1970, plaintiff, in view of an alleged sale of the real estate involved in the lease in mitigation of damages, amended its complaint, limiting its prayer to damages for breach of contract. Defendants also withdrew all prayers in their counter-complaint except for damages. The causes were tried before the trial judge. He rendered judgment of no cause of action against the plaintiff (counter-defendant) and a judgment in favor of defendants (counter-plaintiffs) of $180,000. From this latter judgment, plaintiff (counter-defendant) appeals.

I

Whether the terms of the property description in section 12 of the buy-sell agreement were sufficiently clear to preclude the consideration of extrinsic parol evidence to ascertain the proper interpretation of such terms?

The dispute between counter-plaintiffs and the counter-defendant, Goodwin, Inc., centers on the property description in section 12 of the agreement which states:

"Seller agrees to pay for the construction of a building and improvements, including used car lot layout, drives and parking areas, *on property owned by seller on 28th St., Grand Rapids, Michigan, approximately across from Berger Chevrolet,* pursuant to plans to be approved by buyer and with construction and improvements to be made by a builder or contractor under buyer's direction. Upon closing, seller, as lessor, and buyer, as lessee, shall enter into a lease covering said premises." (Emphasis supplied.)

The trial court found the phrase "on property *owned by* seller on 28th Street, Grand Rapids, Michigan, approximately across from Berger Chevrolet" ambiguous. He therefore looked to extrinsic parol evidence to determine the intent of the parties. The extrinsic evidence considered by the trial court indicates that when Mr. Goodwin and Mr. Coe met to negotiate the terms of the contract, Mr. Coe inquired about the property to be leased on 28th Street. Mr. Goodwin drew a diagram of the property on a bar napkin. This napkin was not introduced at trial as it could not be found. Mr. Coe testified that the diagram on the napkin indicated and Mr. Goodwin told him that the west boundary was a straight line back to the rear boundary of the property. Mr. Goodwin testified

that he did not draw the west boundary as a straight line but rather he drew a "jog" in it. The difference in the amount of property to be leased, depending on whether the west boundary was straight or had a "jog" in it, was approximately three acres. Further evidence adduced indicated that the property that Mr. Goodwin did in fact own on 28th Street did have a "jog" in the west boundary rather than being straight.

After consideration of this extrinsic evidence, the trial court found as follows:

"The court finds as a matter of fact that the defendants have shown by a preponderance of the evidence that there was a meeting of minds between Mr. Goodwin of the plaintiff corporation and the individual defendant on the configuration of the property to be used as a site for the proposed construction on 28th Street, which meeting of the minds encompassed a property boundary on the west which was straight and without "the jog" of which we have heard so much for the last few days. The meeting of minds occurred as a result of a mistake on the part of Mr. Goodwin. This mistake may be categorized as a misrepresentation; it may have been on purpose; it may have been sincere or it may have been simply the result of carelessness, indifference or inattention. I don't think the court really has to determine the reason for the mistake. But the court does find that Mr. Coe's description of what happened during the negotiations prior to execution of the written contract on February 8, 1967, were correct —that the west boundary was to be a straight one. The court bases this conclusion to a good extent on the demeanor of the parties on the witness stand. Mr. Coe was very certain in his recollection of these negotiations and the explanation by Mr. Goodwin of the configuration of the property. Mr. Goodwin, on the other hand, was somewhat vague both during trial and during prior deposition testimony. The court also finds as a matter of fact that Mr. Coe reasonably relied on this representation of the configuration of the land involved.

The court further finds that the phrase 'property *owned by* Seller on 28th Street, Grand Rapids, Michigan, approximately across from Berger Chevrolet' implied property owned in fee or available in fee to the plaintiff, free of encumbrances which would prevent the operation of a car agency of the type then contemplated by Mr. Coe and known to the plaintiff's agent, Mr. Goodwin. In this respect, the court notes the hornbook proposition of law that a party may not avoid a contract on the basis of a mistake where it appears that ignorance of the facts was as a result of carelessness, indifference or inattention, and that a party will be held to that meaning in the wording of a contract which he knew the other party to suppose the words to bear." (Emphasis supplied.)

It is well established that where a contract is clear and unambiguous, parol evidence of negotiations cannot be admitted to vary the contract. *Salzman v Maldaver,* 315 Mich 403 (1946); *Detroit Edison Co v Zoner,* 12 Mich App 612 (1968). Where the words used by the parties in a written contract are clear and have a definite meaning, the court does not have the right to make a different contract for the parties or look to extrinsic evidence to determine their intent. *Sheldon-Seatz, Inc v Coles,* 319 Mich 401 (1947). Furthermore, a mistake in a written contract is not an ambiguity. *Zilwaukee Twp v Saginaw-Bay City R Co,* 213 Mich 61 (1921).

The words in the contract "owned by" have a clear and definite meaning, *i.e.,* denoting an absolute and unqualified title. *Black's Law Dictionary* (4th ed), p 1259; *Palm Springs-La Quinta Development Co v Palm Springs Land & Irrigation Co,* 36 Cal App 2d 730; 98 P2d 530 (1940). Thus, the words "owned by" can only be interpreted as meaning *present* ownership. The words are not ambiguous so as to permit any implication that

they mean property to be acquired in the future nor are they ambiguous so as to permit extrinsic parol evidence to so interpret them. *Palm Springs-La Quinta Development Co v Palm Springs Land & Irrigation Co, supra.*

The parties were men of business experience who negotiated the terms of the contract over a period of time. It was written by them in each other's presence, each party writing a section and submitting it to the other for approval. If they had intended that the lease was to include property to be acquired in the future, they could have said so.

Having found that the words "owned by" are clear and unambiguous and have a definite meaning, it was error for the trial court to consider the extrinsic parol evidence to determine the parties' intent. *Sheldon-Seatz, Inc v Coles, supra.*

## II

Whether the counter-defendant waived the issue of admission of the parol evidence because it failed to object to its admission at trial?

The parol evidence rule is a rule of substantive law as well as a rule of evidence. *Salzman v Maldaver, supra; Thornton Construction Co, Inc v Mackinac Aggregrates Corp,* 9 Mich App 467 (1968). Therefore, parol evidence must be ignored because it has no probative value and because such evidence is legally ineffective in the substantive law. *Thornton Construction, Inc v Mackinac Aggregates Corp, supra;* 9 Wigmore, Evidence (3d ed), § 2400. Because parol evidence is legally ineffective in the substantive law, we rule that the counter-defendant may raise on appeal the issue of admission of such evidence even though it failed to object to its admission at trial.

However, the counter-plaintiffs assert that if any objection had been raised at the time that the parol evidence was admitted at trial, they could have taken appropriate steps to get the testimony into the case by other appropriate means, including, if necessary, amendment of the pleadings. We are sympathetic to this position. A review of the record indicates that counter-defendant first introduced the now-objected-to parol evidence. Although plaintiff (counter-defendant) now claims that the parol evidence was proffered only to meet the defendant's (counter-plaintiff's) defense of misrepresentation, it did not disclose this limited purpose at trial. As such, the counter-plaintiffs may have considered the evidence as being admitted for all purposes. It would be an injustice to the counter-plaintiffs to allow the counter-defendant to not ask that the evidence be received for a limited purpose at the time it adduced the parol evidence and then on appeal to assert that the evidence should have been limited to meet the counter-plaintiffs' defense of misrepresentation without granting the counter-plaintiffs the opportunity to admit proper evidence by appropriate means. So, too, it would be an injustice to the trial judge to find error for allowing the admission of evidence that was not objected to at trial. Therefore, although we reverse because of the improper admission of the parol evidence, we grant counter-plaintiffs a new trial to give them an opportunity to proffer proper evidence by appropriate means if they are able.

In view of our disposition of this case, it is not necessary to discuss the other issues raised. Reversed and remanded for further proceedings.

No costs because of the disposition of the case.

All concurred.