GOODWIN, INC v ORSON E COE PONTIAC, INC

1. EVIDENCE—PAROL EVIDENCE—VENDOR AND PURCHASER—CONTRACTS.

Trial court properly received parol evidence of the negotiations of the seller and buyer prior to the execution of their written contract to buy and sell realty which did not describe it precisely in metes and bounds, in order to determine the meaning of the term "property owned by the Seller" in that contract.

2. EVIDENCE—PAROL EVIDENCE RULE—EXTRINSIC EVIDENCE—CONTRACTS—FRAUD—ILLEGALITY—MISTAKE.

The parol evidence rule does not preclude admission of extrinsic evidence showing: that the writing was a sham, not intended to create legal relations; that the contract has no efficacy or effect because of fraud, illegality, or mistake; that the parties did not "integrate" their agreement, or assent to it as the final embodiment of their understanding; or that the agreement was only "partially integrated" because essential elements were not reduced to writing.

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Vendor and Purchaser §§ 8,122.
[2] 30 Am Jur 2d, Evidence §§ 1021, 1056, 1057.
[3] 30 Am Jur 2d, Evidence §§ 1065, 1066.
[4, 5] 55 Am Jur, Vender and Purchaser §§ 28, 98.
[6] 20 Am Jur 2d, Courts §§ 82–86.
  Power of court to prescribe rules of pleading, practice, or procedure, 158 ALR 715.
[7] 17 Am Jur 2d, Contracts § 501.
[8] 55 Am Jur, Vendor and Purchaser § 553.
[9] 30 Am Jur 2d, Evidence § 1022.

3. Evidence—Extrinsic Evidence—Contracts—Ambiguity—Intent
   —Construction.

   Extrinsic evidence is admissible to prove the existence of ambigu-
   ity or to indicate the actual intent of the parties where ambigu-
   ity may exist in a contract; when ambiguity exists in a con-
   tract, extrinsic evidence is admissible to indicate the actual
   intent of the parties as an aid in the construction of the
   contract.

4. Vendor and Purchaser—Contracts—Words and Phrases—
   Owned By—Ambiguity.

   Ambiguity "may" exist in the phrase "owned by"; the simple
   phrase "owned by", as used in a written contract to buy and
   sell realty, is susceptible of ambiguity; it is subject to qualifica-
   tions as to time, type, status of title, etc.

5. Vendor and Purchaser—Contracts—Ambiguity—Evidence—Pa-
   rol Evidence—Easement.

   An ambiguity, that went to the very heart of the contract, existed
   in a buy-sell agreement involving an automobile dealership
   insofar as the property to be conveyed was merely described as
   "owned by" the seller where parol evidence established that,
   first, the buyer had no intention of buying a property of the
   size and configuration of the lots the seller had under land
   contract, because it could not possibly support the size of
   automobile dealership contemplated; second, the seller had
   represented that the property was of a size and configuration
   that would support such a dealership and the buyer did not
   know otherwise until after the agreement was signed; and,
   third, the property in question was subject to an easement and
   dirt removal rights which were unknown to the buyer.

6. Appeal and Error—Findings of Fact.

   Trial court findings of fact will not be set aside by appellate
   courts unless they are clearly erroneous (GCR 1963, 517.1).

7. Contracts—Rescission—Mutual Mistake—Unilateral Mistake
   —Fraud.

   Generally, rescission of a contract will not lie except for mutual
   mistake or unilateral mistake induced by fraud.

8. Vendor and Purchaser—Contracts—Breach of Contract—
   Damages.

   The existence of a valid and legally binding contract for the sale
   of land was established by a finding by a trial court that there
   was a "meeting of the minds" between parties to a buy-sell

agreement for realty; that the seller failed to perform because of a mistake on its part as to what property was to be conveyed, and that seller failed to perform its end of the contract while defendant met his contractual obligations support the ultimate trial court judgment of damages in favor of the buyer.

9. EVIDENCE—PAROL EVIDENCE—ESTOPPEL—CONTRACTS—AMBIGUITY.

Issue of whether or not the fact that the seller first introduced the parol evidence at trial estops him from objecting on appeal to the admission of parol testimony of prior negotiations, is of no consequence where there was an ambiguity in the contractual language and both the seller and the buyer had the right to introduce parol evidence to clarify its meaning.

Appeal from Court of Appeals, Division 3, T. M. Burns, P. J., and Holbrook and Borradaile, JJ., reversing Kent, George V. Boucher, J. Submitted November 6, 1973. (No. 2 November Term 1973, Docket No. 54,526.) Decided August 2, 1974. See order on application for rehearing at end of opinion, p 219.

43 Mich App 640 reversed.

Complaint by Goodwin, Inc., against Orson E. Coe and Orson E. Coe Pontiac, Inc., for damages for breach of contract. Counterclaim for breach of contract. Judgment of no cause of action against Goodwin, Inc. Judgment in favor of Orson E. Coe and Orson E. Coe Pontiac, Inc., on the counterclaim. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendants appeal. Reversed and trial court affirmed.

*Warner, Norcross & Judd* (by *William K. Holmes* and *William H. Heritage, Jr.),* for plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells),* for defendants.

WILLIAMS, J. This case forcefully demonstrates the costly consequences of formally contracting to buy and sell realty without describing it precisely

in metes and bounds. The written contract of the
parties refers to the realty conveyed merely as:

"[P]roperty owned by Seller on 28th Street, Grand
Rapids, Michigan, approximately across from Berger,
Chevrolet * * * ."

As the facts of this case illustrate, such a de-
scription was sorely deficient.

Two issues are raised for our consideration:

First, did the trial court properly receive parol
evidence of the negotiations of the seller and
buyer prior to the execution of their written con-
tract, in order to determine the meaning of the
term "property owned by Seller" in that contract?

Second, can the seller be heard on this appeal to
object to the admission of parol evidence of prior
negotiations when he raised no objection at trial?

We answer both questions in the affirmative.
Accordingly, the Court of Appeals is reversed and
the trial court affirmed.

## I —TRANSACTION FACTS

The parties commenced negotiations in the fall
of 1966 for the sale of the sole Pontiac dealership
in Grand Rapids, owned by Goodwin, Inc., to Mr.
Coe. Their negotiations were conducted largely at
informal meetings at restaurants.

On February 8, 1967, the parties with their
attorneys executed a multi-faceted buy-sell con-
tract. The terms of that written agreement perti-
nent to the sale of the Pontiac dealership provided
that seller (Goodwin) sell its assets, equipment,
and inventory to buyer (Coe), assign the lease of its
Madison Avenue premises to buyer for temporary
use:

"pay for the construction of a building and improvements, including used car layout, drives, and parking areas, *on property owned by Seller on 28th Street,* Grand Rapids, Michigan, approximately across from Berger, Chevrolet * * * ." (Emphasis added.)[1]

and lease that building and property to buyer.

The buyer, Coe, purchased Goodwin's equipment and inventory, temporarily took possession of the Madison Avenue premises, and commenced operating the Grand Rapids Pontiac dealership.

On January 5, 1968, however, the date found by the trial court to be the date for performance of the contract, the buyer refused to execute the lease for "property owned by Seller on 28th Street" because it did not encompass three acres at the southwest corner that buyer had understood the contract of sale to include. See Appendix A for map showing configuration of property. The seller did not in fact own this acreage, but the buyer contends that he was induced to believe seller owned it by the seller's oral and written representations made prior to the execution of their 1967 written agreement.

The seller, Goodwin, sued the buyer for breach of contract. The buyer, Coe, defended by alleging material misrepresentation by seller of the size and shape of the 28th Street property, and counterclaimed for breach of contract for the seller's failure to lease him "all" the property on 28th Street, including the disputed three-acre parcel.

The buyer testified at trial that the seller had orally represented that the two parcels comprising the 28th Street property constituted 15 acres.

---

[1] Goodwin had purchased two adjoining parcels of land comprising the 28th Street property in December, 1965, on a land contract. The property was approved by General Motors area representative for construction of a larger dealership facility in Grand Rapids for Pontiac cars.

Seller contended, however, that it had described its property as consisting of 13 acres only. Furthermore, it is the buyer's claim that the seller either misrepresented or inadvertently misdescribed the 28th Street property and diagrammed it as having a straight western boundary.

The buyer testified that prior to the signing of their written agreement, the seller's president diagrammed the 28th Street property, at a luncheon meeting, on a bar napkin (which was lost and not introduced at trial) as follows:

"[H]e told me it was approximately 450 or 500 feet of frontage, and going from the northwest corner of the property, *back straight to the railroad tracks,* which run diagonally to the southeast, farther than 450 feet; then, a line straight north, back." (Emphasis added.)

The seller's president, however, testified in his deposition, portions of which were introduced into evidence at trial, that he did not recall ever telling the buyer the western boundary was straight; that he only represented that the property extended back to the railroad tracks.

In fact, the front parcel, which is basically rectangular, has 450 feet of frontage on its northern boundary bordering on 28th Street, and 550 feet of depth. The back parcel, however, conjoins only 245 feet (instead of 450 feet) of the southern boundary of the front parcel, as it is offset 205 feet to the east of that parcel. The back parcel, which is oddly shaped on its eastern border, is approximately 600 feet in depth going back to the railroad tracks. (Appendix A.)

Therefore, buyer contends that only after signing the February, 1967 contract, but before executing the lease, did he discover that the back parcel was offset to the east of the front parcel, causing a

three-acre jog in the western boundary and a bottleneck of 245 feet where the two parcels adjoined. Buyer contends that this rendered the 28th Street property totally unsatisfactory for construction of Grand Rapids' sole Pontiac dealership showroom and facilities since automobiles are best displayed on basically rectangular premises. Also, buyer testified that only after execution of the contract did he discover that seller's title to the 28th Street property was clouded—by an easement across the property, and by the reservation of dirt removal rights by the land contract vendors which if exercised would result in a dropoff of approximately 16 feet between the two parcels.[2]

## II —TRIAL AND APPELLATE FACTS

The case was tried before the court without a jury. There was no objection to the receipt of parol evidence at trial regarding the property intended to be sold.

Each of the parties introduced extrinsic evidence of prior negotiations to prove his case. Goodwin, the seller, called Coe, the buyer, as its first witness to cross-examine him, under the opposite party statute MCLA 600.2161; MSA 27A.2161, as to his recollection of their prior conversations regarding the 28th Street property, and of the sketch diagram of the property the seller had drawn on the bar napkin. Seller sought to show by extrinsic evidence that the parties had made a fully integrated contract and that the words "property owned by Seller" were unambiguous.

The buyer, Coe, also called the seller's president

---

[2] The easement and dirt removal problems were resolved by negotiations between the parties and the land contract vendors before the date selected by the trial court for performance of the contract, January 5, 1968.

under the opposite party statute to establish that
the seller's recollection of their prior negotiations
was comparatively vague, and to elicit extrinsic
evidence probative that "property owned by Seller
on 28th Street" was ambiguous, or that the con-
tract was not a fully integrated agreement, or that
the agreement was induced by the seller's misrep-
resentations.

During the trial, the court did not rule on
whether the parol evidence was admissible, but in
his "findings of fact and conclusions of law" the
trial judge found there was ambiguity in the term
"property owned by Seller". The Court further
found that the parties had agreed upon the sale
and purchase of a larger piece of property than
the seller in fact owned:

"there was a meeting of the minds between Mr.
Goodwin [seller's president] * * * and [Mr. Coe, buyer]
on the configuration of the property to be used as a site
for the proposed construction on 28th Street, which
meeting of the minds encompassed a property boundary
on the west which was straight and without 'the jog' of
which we have heard so much * * * . The meetings
*[sic]* of minds occurred as a result of a mistake on the
part of Mr. Goodwin [seller's president]. This mistake
may be categorized as a misrepresentation; it may have
been on purpose; it may have been sincere or it may
have been simply the result of carelessness, indifference
or inattention. I don't think the Court really has to
determine the reason for the mistake. But the Court
does find that Mr. Coe's [buyer's] description of what
happened during the negotiations prior to execution of
the written contract on February 8, 1967, were *[sic]*
correct—that the west boundary was to be a straight
one. The Court bases this conclusion to a good extent on
the demeanor of the parties on the witness stand. Mr.
Coe was very certain in his recollection of these negoti-
ations and the explanation by Mr. Goodwin of the
configuration of the property. Mr. Goodwin, on the

other hand, was somewhat vague both during trial and during prior deposition testimony."

Applying the principle that he who commits the first substantial breach of contract cannot recover from the other for subsequent failure to perform, *Jones v Berkey,* 181 Mich 472, 480; 148 NW 375 (1914), the trial judge found that the seller, Goodwin, having first materially breached by failing to enter into a lease of "all" the 28th Street property, including the disputed three-acre parcel that he had represented he owned (and which he could have purchased), was not entitled to damages from the buyer.

The court awarded the buyer, Coe, $181,000 in damages on his counterclaim for breach of contract by the seller.

The Court of Appeals reversed, finding that the words in the written contract "owned by" had

"a clear and definite meaning, *i.e.,* denoting an absolute and unqualified title. *Black's Law Dictionary* (4th ed), p 1259; *Palm Springs-LaQuinta Development Co v Palm Springs Land & Irrigation Co,* 36 Cal App 2d 730; 98 P2d 530 (1940). Thus, the words "owned by" can only be interpreted as meaning *present* ownership. The words are not ambiguous so as to permit any implication that they mean property to be acquired in the future nor are they ambiguous so as to permit extrinsic parol evidence to so interpret them." 43 Mich App 640, 645-646; 204 NW2d 749 (1972).

Therefore, the Court of Appeals found that the parol evidence of prior negotiations was improperly admitted. However, the Court remanded for a new trial to afford the buyer an opportunity to proffer the parol evidence by proper means.

We reverse the judgment of the Court of Appeals and affirm the trial court.

## III —PAROL EVIDENCE RULE

### A. PAROL EVIDENCE RULE: GENERAL

The Court of Appeals unexceptionally stated the basic parol evidence rule as follows:

"It is well established that where a contract is clear and unambiguous, parol evidence of negotiations cannot be admitted to vary the contract. *Salzman v Maldaver,* 315 Mich 403 [24 NW2d 161] (1946); *Detroit Edison Co v Zoner,* 12 Mich App 612 [163 NW2d 496] (1968)."

A number of well-established exceptions to the parol evidence rule have been recognized, however, by Michigan courts. For example, the rule does not preclude admission of extrinsic evidence showing: that the writing was a sham, not intended to create legal relations, *Tepsich v Howe Construction Co,* 377 Mich 18, 23–25; 138 NW2d 376 (1965); that the contract has no efficacy or effect because of fraud, illegality, or mistake, *Rood v Midwest Matrix Mart, Inc,* 350 Mich 559, 564–567; 87 NW2d 186 (1957); *Schupp v Davey Tree Expert Co,* 235 Mich 268, 271; 209 NW 85 (1926); that the parties did not "integrate" their agreement, or assent to it as the final embodiment of their understanding, *Mardon v Ferris,* 328 Mich 398, 400; 43 NW2d 904 (1950); *Wagner v Egleston,* 49 Mich 218; 13 NW 522 (1882); or that the agreement was only "partially integrated" because essential elements were not reduced to writing, *Brady v Central Excavators, Inc,* 316 Mich 594; 25 NW2d 630 (1947).

### B. PAROL EVIDENCE RULE: THIS CASE

There are a number of Michigan cases from which a rule of law can be deduced for this case.

This Court unanimously, speaking through Jus-

tice ADAMS, held in *New Amsterdam Casualty Co v Sokolowski,* 374 Mich 340, 342; 132 NW2d 66 (1965):

"If the language of the contract is clear and unambiguous, it is to be construed according to its plain sense and meaning; but if it is. ambiguous, testimony may be taken to explain the ambiguity."

The language in question was:

"The contractor further agrees to assume any and all subcontracts and purchase orders placed by the original contractor which remained unfulfilled as of September 1, 1954, and to make prompt payments for all material, equipment and supplies, and to subcontractors, if any, of all balances to become due such suppliers and subcontractors, for materials furnished and labor performed after September 1, 1954." 374 Mich 340, 341.

The issue was whether these words implied the contractor assumed both the work and the debts contracted prior to September 1, 1954 or just the work. This Court affirmed the trial court that looked to the circumstances at the time of contracting and found that the financial condition of the contractor was such he could not have undertaken to assume the prior debts and consequently held that the quoted language meant that the contractor assumed only the prior contracted work and not the debts which he could not have afforded to do.

Chief Justice T. M. KAVANAGH speaking for a unanimous Court said in *McCarty v Mercury Metalcraft Co,* 372 Mich 567, 575; 127 NW2d 340 (1964) *cert den,* 380 US 952; 85 S Ct 1085; 13 L Ed 2d 969 (1965):

"Defendant correctly contends that where a latent ambiguity exists in a contract, *extrinsic evidence is*

*admissible to indicate the actual intent of the parties as an aid to the construction of the contract.*

"A latent ambiguity is one 'where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for interpretation or a choice among 2 or more possible meanings.' Black's Law Dictionary (4th ed), p 105. *Since the detection of latent ambiguity requires a consideration of factors outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist."* (Emphasis added.)

The issue was whether a contract phrase "all orders" literally meant all orders or whether it referred only to "prototype" orders. This Court upheld the trial court's admitting parol evidence to find that there was no ambiguity.

This case is significant for our inquiry in two respects. First, it recognizes that the detection of an ambiguity requires admissibility of extrinsic evidence to prove it or, as in this case, disprove it, "as well as to resolve any ambiguity proven to exist". Second, "extrinsic evidence is admissible to *indicate the actual intent of the parties".*

It is noted in passing that in this case, as well as in some others, a distinction is made between "latent" and "patent" ambiguity. See *Zilwaukee Twp v Saginaw B C R Co,* 213 Mich 61; 181 NW 37 (1921).

In the *McCarty* case the ambiguity was clearly latent and the defendant had made a point of it so the language was therefore apt. However, in the *New Amsterdam* case just considered, the rule was stated without reference to "latent" or "patent" ambiguity. Furthermore, it is not too easy to say whether the ambiguity was "latent" or "patent". In any event, the same rule should apply to both.

See the language applied in the next two cases
discussed *infra, In re Traub Estate* and *Roy An-
nett.*

*In re Traub Estate,* 354 Mich 263; 92 NW2d 480
(1958), and *Roy Annett, Inc v Killin,* 365 Mich 389;
112 NW2d 497 (1961), both involved language very
similar to the instant case. In *In re Traub Estate,*
the question was whether a contract to bequeath
"to Robert C. J. Traub all of the shares" meant
only Robert was entitled to the stock in the event
he predeceased the other contracting party or
whether his heirs were also entitled to the stock.
Obviously, it could be argued that the words to
bequeath "to Robert C. J. Traub" were unambigu-
ous, but this Court in a five to three decision
admitted extrinsic evidence to show that the sec-
ond party to the contract understood that not only
Robert Traub but also his daughter were to be
beneficiaries of the will under the contract. In *Roy
Annett,* the language in issue was a limitation not
to be "sold by the owner", where in fact the owner
sold through another broker. Again it could be
argued the language was unambiguous, but this
Court with no dissent approved the admission of a
statement by the owner at the time of contracting
that he had asked the broker whether the limita-
tion precluded sale through another broker and
was told it did not. This Court speaking through
Justice EDWARDS so interpreted the phrase and
repeated with approval (365 Mich 389, 395) the
following language of Justice TALBOT SMITH in the
majority opinion of *In re Traub Estate* (it is inter-
esting to note Chief Justice DETHMERS signed this
opinion although he dissented in *Traub* presuma-
bly on the facts):

"By way of preface we should say that in event of
ambiguity in an instrument we make use of all possible

aids in construction, the parol evidence rule to the contrary notwithstanding. 3 Corbin, Contracts, § 579, p 250, states the principle with clarity:

" 'As long as the court is aware that there may be doubt and ambiguity and uncertainty in the meaning and application of agreed language, it will welcome testimony as to antecedent agreements, communications, and other factors that may help to decide the issue.' " 354 Mich 263, 280.

Pointing toward the real purpose of reference to extrinsic evidence, certain language in *Keller v Paulos Land Co,* 381 Mich 355; 161 NW2d 569 (1968), is most significant. The dispute in that case concerned the scope within which a "nonexclusive easement for purposes of ingress and egress" could be employed. The Court found that the words were "ambiguous" as to the proper uses of the easement where the land contract subject to easement was landlocked. The Court determined on the basis of extrinsic parol testimony that the intent of the parties was to include parking rights in the conveyance although semantically, there is no question that the terms ingress and egress would not in the usual case include parking.

The significant language in *Keller* was spoken by Chief Justice DETHMERS for a unanimous Court as follows:

"In the light of this ambiguous term in the land contract, the trial court properly permitted oral testimony *to determine the true intent of the parties."* (Emphasis added.) 381 Mich 355, 362.

The emphasis in *Keller "to determine the true intent of the parties"* certainly seems normal and in order and a proper rule to follow. That such language speaks this Court's rule is indicated by similar and even stronger language in an earlier

case, *McIntosh v Groomes,* 227 Mich 215; 198 NW
954 (1924). In *McIntosh,* the language in issue was
"from the sale of said valves, the sum of one
thousand dollars per annum, payable at the rate of
ten cents for each and every valve sold" and the
issue was whether there was an annual guaranty
of $1,000 a year in the event no valves were sold.
Since the Justices personally differed in their in-
terpretation of the language itself, Justice SHARPE
in writing for six of the eight members of the
Court said:

"If ambiguous terms are used, the preliminary negoti-
ations may be considered, not to vary or contradict the
plain terms of the instrument, but to aid the court *in
determining the intent with which such words were
used.* "(Emphasis added.) 227 Mich 215, 219–220.

This Court found a contemporary oral promise of a
"guaranty of a thousand dollars a year" and so
construed the above words.

Elsewhere in the *McIntosh* opinion, this Court
stated the basic rule for all contracts, including
those challenged under the doctrine of the parol
evidence rule, namely:

"The cardinal rule in the interpretation of contracts
is *to ascertain the intention of the parties.* To this rule
all others are subordinate." (Emphasis added.) 227 Mich
215, 218.

From these cases we derive the following rules
to decide this case:

1) Where ambiguity may exist in a contract,
extrinsic evidence is admissible to prove the exis-
tence of ambiguity.

2) Where ambiguity may exist in a contract,
extrinsic evidence is admissible to indicate the
actual intent of the parties.

3) Where ambiguity exists in a contract, extrinsic evidence is admissible to indicate the actual intent of the parties as an aid in the construction of the contract.

## C. RESTATEMENT OF THE LAW

Professor Corbin's thought has already been recognized in this and prior Michigan cases, and its relevance to our law noted.

The American Law Institute, Restatement of the Law of Contracts, § 242 and particularly the comment should also be noted. The comment is set out in full because it squares so well with the rules we have decided upon from our own cases.

"Comment:

a. Where the parties by the language they have employed leave their meaning obscure and uncertain when applied to the subject-matter, then the expressions and general tenor of speech used in the previous negotiations, even if coming as they usually must from one or the other of the parties themselves, are admissible to show the conditions existing at the time when the writing was made. And even where the writing is not ambiguous on its face, the circumstances under which the parties contract may be looked at to establish an ambiguity, as well as to indicate the proper choice of possible meanings; and the common knowledge and the understanding of the parties themselves as shown by their previous negotiations is sometimes such a circumstance. There is, however, a limit to the application of the rule stated in the Section. Previous negotiations cannot give to an integrated agreement a meaning completely alien to anything its words can possibly express. In an unintegrated agreement there is no such absolute limitation, but the more unusual the meaning sought to be given unintegrated words, the more difficult will it be to establish such a meaning as the true one."

The limit described in the comment is interesting though not factually applicable in our case. There is a similar rule in Michigan case law. See *Flajole v Gallaher,* 354 Mich 606; 93 NW2d 249 (1958).

## IV —MAY AMBIGUITY EXIST HERE?

As most cases reaching this Court, this is not an easy one. Competent lawyers drafted an agreement in an important and expensive transaction. Yet four experienced judges disagreed on the meaning of a relatively simple phrase in that agreement, "owned by".

The able trial judge said in his opinion:

"There are several ambiguities in that phrase; what is meant by 'owned'; when such ownership must exist; and, collaterally, what type of ownership or status of title was meant. Now, in determining the meaning of ambiguous phrases in written contracts of this sort, the Court must look to the intention of the parties and carry that intention into effect. In doing so, the Court may, and has at some length, look to extrinsic evidence and construe such intention in light of the apparent purpose of the parties in making the agreement."

On the other hand, three learned appellate judges said in their opinion:

"The words in the contract 'owned by' have a clear and definite meaning, *i.e.,* denoting an absolute and unqualified title. *Black's Law Dictionary* (4th ed), p 1259; *Palm Springs-LaQuinta Development Co v Palm Springs Land & Irrigation Co,* 36 Cal App 2d 730; 98 P2d 530 (1940). Thus, the words 'owned by' can only be interpreted as meaning *present* ownership. The words are not ambiguous so as to permit any implication that they mean property to be acquired in the future nor are they ambiguous so as to permit extrinsic parol evidence to so interpret them. *Palm Springs-LaQuinta Develop-*

*ment Co v Palm Springs Land & Irrigation Co, supra."*
43 Mich App 640, 645–646; 204 NW2d 749 (1972).

It is clear that whatever the legal problem, there is a problem of semantics. The able trial judge finds "owned by" ambiguous. The learned appellate judges find the words "owned by" "have a clear and definite meaning". Both reach their conclusions from the words themselves and without reference to extrinsic evidence, although the trial judge resorted to extrinsic evidence to resolve the ambiguity.

As we undertake to determine whether there was such ambiguity in the contract to admit extrinsic evidence to aid in construing it, we are therefore met on the threshold by the fact that the able trial judge found "owned by" ambiguous but that the three appellate judges did not. It is interesting to note that Justice SHARPE in *McIntosh, supra,* observed that not all of his brethren agreed with his own interpretation of the contract there in question. He then said:

"Such difference of opinion, I think, is quite conclusive that the language used, taken as a whole, is ambiguous, that is, of doubtful and uncertain meaning." 227 Mich 215, 219.

While a trial judge sits in a different position, his view of the matter is not without considerable significance in such a question.

In any event, we must analyze our case with the rules we have deduced from our case law. Our first rule was that where ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of the ambiguity. *McCarty, supra.*

We agree with the able trial judge that the phrase "owned by" is susceptible of ambiguity. Most of us would say we "owned" our home even

if, as the saying goes, we "owned" it with the bank.

The simple phrase "owned by" as the able trial judge suggested is subject to qualification as to time, type, status of title, etc. The wisdom of this belief is sustained by the actual facts. Contrary to the definition of the learned appellate judges, the ownership was actually neither "present" nor "absolute or unqualified". Full payment on the land contract had not been made and the title was subject to an easement and dirt removal rights.

In short, there might well be an ambiguity in the term "owned by".

Reference to prior Michigan cases shows that this Court has found phrases seeming at least equally unambiguous, nonetheless, sufficiently susceptible of ambiguity to admit extraneous evidence to establish ambiguity: "all orders", *McCarty, supra;* "to Robert C. J. Traub", *In re Traub Estate, supra;* "sold by owner", *Roy Annett, supra;* "profits", *Brown v A F Bartlett & Co,* 201 Mich 268; 167 NW 847 (1918); "Emma H. Foote, beneficiary," *Hall v Equitable Life Assurance Society of the United States,* 295 Mich 404; 295 NW 204 (1940). In all of the cases except *McCarty* when extrinsic evidence was admitted ambiguity was actually found.

It is clear that ambiguity "may" exist in the phrase "owned by".

## V —DO PRIOR NEGOTIATIONS ESTABLISH AMBIGUITY?

It appears from the extrinsic evidence introduced in this case that the seller and buyer conducted their negotiations with almost cavalier informality. The seller and buyer never discussed

the 28th Street property in terms of metes and bounds. Neither buyer nor his attorney walked the length or breadth of the property. Moreover, no title search was made on the property so that the buyer did not discover that the seller's title was clouded by an easement and by provisions of the land contract until after the lease agreement was signed.

The testimony establishes that at the time of contracting the seller held title to the 28th Street property under a land contract which included a provision reserving to the land contractor vendors dirt removal rights, the exercise of which would cause a dropoff of from 10 to 16-1/2 feet between the two parcels. The seller conceded on cross-examination that he had never discussed the land contract dirt removal rights with the buyer or the 33-foot easement across the juncture of the 2 parcels because they were not significant factors in his mind. Financing for the buildings to be constructed on the 28th Street property was also not secured until months after the written agreement was signed, despite a clause in the contract requiring financing within 30 days.

The inference is strong, after examining the testimony, that one of the chief inducements to the execution of the written contract's 28th Street property lease provisions was that a larger dealership facility could be built there. The buyer testified that he was aware that General Motors had approved the 28th Street property as a location for Goodwin's new premises, and asserts that he relied on that and the seller's representation that the property was approximately rectangular when he signed the written agreement. The builder hired by buyer to construct his new facilities at a different location after negotiations to lease the 28th

Street property broke down, testified that it would be difficult to build a high-volume dealership of the buyer's specifications, with showroom, service building, body shop, general office, customer parking, and space for 250–500 cars on the 2 offset parcels comprising the 28th Street property. General Motors' regional representative also testified that it would have been difficult for the buyer, Coe, to establish his intended dealership on the bottlenecked, irregularly-shaped 28th Street property that the seller actually owned.

The parol evidence introduced by the buyer was subject to rebuttal by all relevant testimony as to the prior negotiations. The seller introduced parol evidence to establish that the parties were both experienced in business and represented by counsel, that considerable negotiation had preceded settling upon the contract, and that both parties knew on the date for performance of the contract (January 5, 1968) that seller did not own the disputed three-acre parcel at the western side of his 28th Street property.

But the testimony of seller's president so indicated that he himself did not have in mind the exact size and shape of the property he owned on 28th Street at the time of contracting. Moreover, his recollection of the contractual negotiations was comparatively vague, and his testimony at trial was called into question by inconsistent statements in his deposition taken two years earlier that he was uncertain whether he had discussed the shape of the property with the buyer at all. Consequently, the seller did not make a persuasive case that the words of ownership were used in their narrowest, literal sense only.

The parol evidence admitted in sum establishes three significant points:

First, buyer had no intention of buying a property of the size and configuration of the two lots seller had under land contract, because it could not possibly support the size of automobile dealership contemplated.

Second, seller had represented that the property was of a size and configuration that would support such a dealership and buyer did not know otherwise until after the agreement was signed.

Third, the property in question was subject to an easement and to dirt removal rights. In addition, seller only had the property under land contract and had not secured construction financing as agreed when the contract was signed—all of which was unknown to buyer.

Points one and two clearly indicate that the intention of the buyer was to purchase a piece of property other than that of size and configuration seller had under contract. However, the seller based his lawsuit on theory the agreement in issue was to sell the property it had under contract. This certainly establishes an ambiguity that goes to the very heart of the contract.

## VI —FAILURE OF SELLER TO ABIDE BY CONTRACT

The trial court, after considering the points discussed *supra,* brought out by the parol evidence admitted into testimony, *inter alia,* concluded in its findings of fact:

"The Court finds as a matter of fact that the Defendants have shown by a preponderance of the evidence that *there was a meeting of minds* between Mr. Goodwin of the Plaintiff Corporation and the individual Defendant on the configuration of the property to be used as a site for the proposed construction on 28th

Street, *which meeting of the minds encompassed a property boundary on the west which was straight and without 'the jog' of which we have heard so much for the last few days."* (Emphasis added.)

Trial court findings of fact will not be set aside by appellate courts unless they are clearly erroneous. GCR 1963, 517.1. As our discussion in the preceeding section intimates, this trial court finding that there was indeed a "meeting of the minds" with regard to the property to be conveyed, was far from a clearly erroneous conclusion on the state of the record. It appears that both Goodwin and Coe intended to contract for the same property—property with a "straight" western boundary line.

What confuses this conclusion is the further commentary of the trial court alluding to the question of mistake or misrepresentation:

"The meetings *[sic]* of minds occurred as a result of a mistake on the part of Mr. Goodwin. This mistake may be categorized as a misrepresentation; it may have been on purpose; it may have been sincere or it may have been simply the result of carelessness, indifference or inattention. I don't think the Court really has to determine the reason for the mistake."

As the parties have noted in their briefs to this Court, the question of misrepresentation was not raised as a counterclaim in the trial court pleadings, though appellant contends that the Court of Appeals should have *sua sponte* granted amendment of the pleadings to conform to the evidence. It is not necessary to consider this contention in light of our disposition of this cause.

Further, the possibility that Goodwin himself was unaware of the extent of his ownership of property on 28th Street through some form or

other of inadvertence, is not a "mistake" raising
the possibility of total rescission of the contract by
this Court. Nor does appellee make such a claim.
As Chief Justice (then Justice) T. M. KAVANAGH
noted in *Windham v Morris,* 370 Mich 188, 193;
121 NW2d 479 (1963):

"Generally, rescission of a contract will not lie except
for mutual mistake or unilateral mistake induced by
fraud."

See also *Trembert v Mott,* 271 Mich 683, 692; 261
NW 109 (1935).

The trial court did not find mutual mistake—
only "mistake on the part of Mr. Goodwin". Nor
was there any finding that Goodwin's mistake was
in any fashion induced by fraud on the part of
Coe. Accordingly, we concur in the trial court
conclusion that a binding contract existed between
Goodwin and Coe and, again, that the common
intent was to contract for the sale of property with
a "straight" western boundary line.

All of the foregoing establishing the existence of
a valid and legally binding contract for sale of
land including the disputed three-acre parcel, the
further findings of the trial court, namely that
Goodwin failed to perform its end of the contract
while Coe met his contractual obligations, support
the ultimate trial court judgment of damages in
favor of the buyer, Coe.

Accordingly, the trial court judgment is rein-
stated.

## VII —ESTOPPEL ISSUE

The other issue raised in this case, whether or
not the fact that the seller first introduced the
parol evidence at trial estops him from objecting

on appeal to the admission of parol testimony of prior negotiations, is of no consequence. Since there was an ambiguity in the contractual language, both the seller and the buyer had the right to introduce parol evidence to clarify its meaning.

## VIII —CONCLUSIONS

The Court of Appeals is reversed. The trial court is affirmed.

Costs to defendants.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, LEVIN, and M. S. COLEMAN, JJ., concurred with WILLIAMS, J.

J. W. FITZGERALD, J. did not sit in this case.

## *ORDER*

Entered December 20, 1974.—REPORTER.

On order of the Court, an application for rehearing having been filed herein, this Court recognizes that it erred in not noticing that the stipulation of non-residency was "special". Accordingly, the Court reaffirms its opinion and reversal of the Court of Appeals but vacates its affirmance of the trial court order. This cause is remanded to the Court of Appeals for further consideration in light of these facts and the Court's opinion at 392 Mich 348 (1974). Costs to defendants-appellants for proceedings in this Court only.

## APPENDIX A

N

28th Street

480'

PARCEL # 1

530'

W                                      E

205              247½

disputed area

PARCEL # 2

460'

Railroad

one inch =
200'

S