ESTATE OF ERNEST R. ANDERSON, Deceased, LAWRENCE E. ANDERSON and RICHARD C. ANDERSON, Co-Administrators, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Anderson v. Commissioner
Docket No. 7540-74.
United States Tax Court
T.C. Memo 1977-237; 1977 Tax Ct. Memo LEXIS 206; 36 T.C.M. (CCH) 972; T.C.M. (RIA) 770237; July 26, 1977, Filed Thomas P. Casey, for the petitioner. Thomas R. Ascher, *207 for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a $38,502.71 deficiency in the Federal estate tax of the Estate of Ernest R. Anderson. The matter before us concerns the effect of a buy-sell agreement on the valuation of decedent's stock in a closely held corporation. A memorandum opinion was filed in this case on September 9, 1976 (T.C. Memo. 1976-287). On October 12, 1976, petitioner filed a "Motion for Reconsideration of Findings and Opinion and for Further Trial, if Necessary" and a "Motion to Vacate Opinion." By order, dated November 15, 1976, the Court granted the "Motion to Vacate Opinion" and ordered the case set for further trial. Such further trial was held on March 30, 1977, and the within findings of fact and opinion represent a consolidated treatment of the proceedings herein. FINDINGS OF FACT The stipulations of facts and accompanying exhibits are incorporated herein by this reference. Lawrence E. Anderson of Rochester, Michigan, and Richard C. Anderson of Davisburg, Michigan (hereinafter Lawrence and Richard), are co-administrators of the Estate of Ernest R. Anderson (hereinafter *208 decedent or settlor). Lawrence and Richard are decedent's natural sons. Decedent died on May 7, 1970. A Federal estate tax return was filed with respondent's regional service center at Cincinnati, Ohio, on August 6, 1971. At the time such return was filed and at the time of the filing of the petition herein, Manufacturers National Bank of Detroit, having its principal place of business in Detroit, Michigan, was acting as executor of decedent's estate. Subsequently, Lawrence and Richard were appointed co-administrators in the place and stead of Manufacturers National Bank. Prior to December 1, 1964, decedent owned all of the stock of the Anderson Music Company (hereinafter Anderson or "the company"). The company employed Lawrence, Richard, and one Horst Haber (hereinafter Horst). Decedent had brought Horst into his home when Horst was a teenager and considered him to be his adopted son. In 1964, Lawrence and Horst were president and secretary, respectively, of Anderson. Because of his long work hours and his work responsibilities, Horst felt he deserved an ownership interest in Anderson. Although Lawrence and Richard were of the same mind, it was Horst who persuaded decedent *209 to allow him and the two sons to purchase company stock by indicating to decedent that he was prepared to leave the company and accept a better offer elsewhere unless this were done. On December 1, 1964, decedent created a revocable inter-vivos trust and initially transferred to Manufacturers National Bank of Detroit (hereinafter Manufacturers or trustee), as trustee, 120 shares of Anderson stock. [1] The trustee was empowered to sell any of the trust assets and to convert all assets to cash. Decedent reserved a life income interest, a right to amend or revoke the trust, and a right to withdraw any of the trust property upon written notice to the trustee. At the settlor's death, his widow was given a life interest in the trust property; at her death, the corpus was to be divided equally among Lawrence, Richard, and Horst, provided each survived to age 35, or to their issue by right of representation. Also on December 1, 1964, decedent executed a stock purchase agreement with Anderson whereby he agreed to sell and Anderson agreed to purchase ten shares of *210 company stock annually on July 1 of each year for a period of ten years at $650 per share. On January 29, 1965, Lawrence, Richard, and Horst executed a purchase and sale agreement among themselves reciting that the parties were purchasing Anderson stock "under the terms of" the trust agreement between the decedent and Manufacturers. They agreed that if any of them left his employment with the company for any reason other than disability, or if any of them entered into a competing business in the State of Michigan, he would be obligated to sell his Anderson stock back to the company also at a price of $650 per share. They further agreed that -- a notation concerning this Agreement may be endorsed upon any certificates representing outstanding shares of stock in the ANDERSON MUSIC COMPANY. [2]
The contract was signed by the three parties in their individual capacities. [3]
On February 1, 1965, Manufacturers, *211 as trustee under decedent's revocable trust, entered into a buy-sell agreement with Lawrence, Richard, and Horst. The agreement provided in pertinent part as follows: The Trustee agrees to sell to each of the Buyers, individually, four (4) shares of ANDERSON MUSIC COMPANY stock each year for a consideration of Six Hundred Fifty ($650.00) Dollars per share.
The Buyers, individually, agree to buy four (4) shares of ANDERSON MUSIC COMPANY stock each year, for a consideration of Six Hundred Fifty ($650.00) Dollars per share. Said purchases and sales are to take place initially on July 1, 1965 and each July 1 thereafter until all stock in the ANDERSON MUSIC COMPANY held by the Trustee has been sold to the Buyers. This Agreement is to remain in effect until all of the stock held by the Trustee in the ANDERSON MUSIC COMPANY has been sold to the Buyers and the entire Trust property and estate of the Trust between ERNEST R. ANDERSON and the Trustee has been converted to cash. [Emphasis added.] The agreement also provided: [This] agreement is subject to all of the restrictions on said stock as exist at the present time. Moreover, the trustee promised not to sell *212 the Anderson stock to any other party. Pursuant to this agreement, the trustee sold four shares of stock to each of the individuals on the appointed date in 1965, 1966, and 1967. Article IV of decedent's Last Will and Testament, dated August 29, 1967, provided as follows: In the event that I hold any shares of the ANDERSON MUSIC COMPANY, a Michigan corporation at the time of my death, then I hereby give, devise and bequeath this capital stock in three (3) equal shares to my two natural sons, LAWRENCE E. ANDERSON and RICHARD C. ANDERSON, and to HORST W. HABER. The will made no mention of the trust agreement of December 1, 1964, the agreement between decedent and the company of the same date, or the February 1, 1965 buy-sell agreement between the trustee and Lawrence, Richard, and Horst. On or about September 5, 1968, decedent withdrew from his revocable trust the 84 unsold shares of Anderson stock. [4] On September 12, 1968, decedent sold to each of Lawrence, Richard, and Horst four shares of Anderson stock at a price of $650 per share. Sometime in 1969, decedent again sold four shares to each at a price of $650 per share. *213 On September 24, 1969, decedent executed a codicil to his Last Will and Testament wherein he revoked Article IV and bequeathed the Anderson stock "that I own * * * at the time of my death" (emphasis added) to Lawrence and Richard, his natural sons, equally. The codicil made no mention of the agreement between decedent and the company or of the February 1, 1965, buy-sell agreement between the trustee of the revoked December 1, 1964, trust and Lawrence, Richard, and Horst. [5]
In the latter part of 1969, Lawrence and Richard decided that they wanted to control the management of Anderson themselves and they asked Horst to leave the company. It was then agreed among the decedent, Lawrence, Richard, and Horst that Horst would leave Anderson as of March, 1970, and that he would surrender his stock in Anderson, as well as his interests in certain other family-owned businesses, for a "fair price." At that time, Horst owned 20 shares of Anderson stock, having purchased four shares a year over a five-year period. He expected to completely terminate his *214 interest in Anderson and did not consider continuing with his annual purchase of four shares of Anderson stock. Horst left his employment with Anderson in March, 1970, but no "fair price" had then been agreed upon. At his death, decedent owned 170 shares of Anderson stock. In the estate tax return filed for the decedent's estate, 110 shares of the Anderson stock were valued at $2,500 per share. The remaining 60 shares of Anderson stock were valued at $650 per share. Respondent determined that all of the Anderson stock should have been valued at $2,500 for estate tax purposes. The parties have stipulated that, "without regard to the legality of the agreement between the trustee and Lawrence, Richard, and Horst," the fair market value of the Anderson stock was $650 per share on December 1, 1964 (and we find that this was also the fair market value on February 1, 1965) and $2,500 per share at the time of decedent's death. On April 21, 1971, Horst brought an action in the Circuit Court of Wayne County in Michigan against Manufacturers, as executor of the estate and as trustee, asserting, as a first count, a claim to one-third of the decedent's interest in Anderson based on an *215 agreement with decedent and, as a second count, a claim for specific performance of the February 1, 1965, agreement between the trustee and Lawrence, Richard, and Horst. More specifically, Horst requested as relief in respect of such second count-- [that] this Court enter a declaratory judgment that Plaintiff has the right to purchase stock in Anderson Music Company, a Michigan corporation, according to the terms of said Trust Agreement and Buy and Sell Agreement at the rate of four shares per year at a price of $650.00 per share until no more shares of said Company are held by Bank.
Horst initiated the lawsuit when negotiations for the determination of a fair price for his Anderson stock as well as his interests in other family-owned businesses came to a stalemate. The action was settled in February 1972 and, as part of that settlement, Anderson agreed to pay Horst $25,000 for his 20 shares of Anderson stock. [6]
Lawrence and Richard took all 170 shares of Anderson stock that decedent owned at death under *216 the decedent's will. They did not give any consideration for any of such shares to the decedent's estate. The only other beneficiary of the estate was the decedent's wife. ULTIMATE FINDINGS OF FACT The February 1, 1965, buy-sell agreement terminated at the time decedent revoked the December 1, 1964, trust. The February 1, 1965, buy-sell agreement was not in effect at decedent's death. OPINION The issue before us is the value for Federal estate tax purposes of 60 of the 170 shares of Anderson stock held by the decedent at his death. Resolution of this issue depends upon whether the February 1, 1965, buy-sell agreement executed by the trustee, Lawrence, Richard, and Horst was sufficiently binding at the decedent's death so as to require the 60 shares to be valued at the contract price of $650 per share. [7]
Petitioner takes the position that the agreement continued notwithstanding the decedent's revocation of the December 1, 1964, trust; that, upon such revocation, the decedent (and subsequently *217 his estate) merely succeeded to the trustee's rights and obligations thereunder; and that therefore the 60 shares remained subject to the obligation to sell at $650 per share at his death. Respondent argues that the February 1, 1965, buy-sell agreement terminated upon the decedent's revocation of the trust. His reasoning is twofold: (1) that the trustee could not bind the settlor to the buy-sell agreement and (2) that the agreement terminated when the decedent withdrew the corpus remaining in 1968 and revoked the trust. [8]
Initially, we reject respondent's position to the extent that it rests on the bald assertion that the trustee was not an agent of the decedent in executing the February 1, 1965, buy-sell agreement; *218 that therefore decedent was not a party to that agreement; and that ipso facto decedent was not bound thereby. The trustee had broad powers of sale and, if no other considerations were involved herein, we would not necessarily conclude that decedent was relieved of the obligation imposed by the buy-sell agreement, if it was determined that the agreement otherwise survived the withdrawal of the 84 shares and was in effect at decedent's death. The fact of the matter, however, is that we are satisfied that the February 1, 1965, buy-sell agreement did not so survive and that, if it did, it nevertheless ceased to be effective prior to decedent's death. The issues of the survival and continued effectiveness of the February 1, 1965, buy-sell agreement are essentially factual in nature and, given the ambiguous character of the pertinent provisions of the instruments involved herein, we are justified in taking into account the actions and intent of the decedent and the other interested persons as well as the language of the provisions themselves. See Goodwin, Inc. v. Coe,392 Mich. 195, 220 N.W. 2d 664 (1974); 4 Williston on Contracts, sec. 600, et seq. (3d ed. 1961). *219 Petitioner has the burden of proof. Rule 142, Rules of Practice and Procedure of this Court. Our conclusions herein are reached in the context of that burden and upon the basis of our evaluation of the written evidence as augmented by the oral testimony of witnesses whom we heard and observed. The February 1, 1965, buy-sell agreement between the trustee and Lawrence, Richard, and Horst specifies that the purchases and sales are to continue and the agreement is to remain in effect "until all of the stock held by the Trustee in ANDERSON MUSIC COMPANY has been sold to the Buyers." See p. 6, supra. Nowhere in the agreement is there any mention of 120 shares or a ten-year term. The absence of any such reference is particularly conspicuous. [9] That the trust was, in fact, initially funded with 120 shares does not, in and of itself, superimpose a ten-year duration on the contract subsequently entered into by the trustee (the time it would take to dispose of 120 shares in the manner specified by the contract), particularly where the settlor specifically reserved the power to "add additional property" to the trust corpus from time to time. Moreover, we think it of some significance *220 that the January 29, 1965, purchase and sale agreement by which Lawrence, Richard, and Horst imposed restrictions upon themselves with respect to the Anderson stock which they planned to purchase recited that such purchases were to be made "under the terms of" the trust agreement, one of which terms was the settlor's right of revocation. We recognize that Horst testified, at the further trial, that when decedent agreed to let him purchase some Anderson stock, an attorney was engaged to do "some paperwork and-- one of the things that was drawn up was an agreement to where [sic] we could buy 40 shares a piece [sic] * * * we were buying, every year, over a ten-year period, 4 shares of stock * * *. Unfortunately, from the context in which such testimony was given, we cannot discern whether it simply describes an element of the negotiating process or Horst's understanding of the agreement as finally executed. In any event, it is contradicted by Horst's allegation of *221 his understanding of the agreement at the time he brought suit for enforcement thereof. In his complaint filed in such suit, Horst claimed the right to buy four shares of stock each year only "until no more shares of said Company are held by Bank." [10]
Petitioner seeks to draw sustenance from the continued annual sales by decedent, contending that such sales show that decedent intended that the February 1, 1965, buy-sell agreement would continue in full force and effect and that he would be bound thereby. But, in light of the totality of the evidence herein and the absence of any other persuasive evidence of a continuing obligation on the part of the decedent, we think that such sales represented no more than annual, independent, voluntary acts on decedent's part. At most, they show a self-imposed intention to continue to make such sales each year and are insufficient to satisfy petitioner's burden of proof that decedent had a binding commitment at his death to do so. In short, we hold *222 that petitioner has not carried its burden of proof that the February 1, 1965, buy-sell agreement was to continue beyond the time when any of the Anderson stock remained in trust. Accordingly, we conclude that the agreement terminated at the time decedent revoked the December 1, 1964, trust and that the 60 shares held by the decedent at his death were not subject to that agreement. For this reason, respondent's determination, that such shares should be included in the gross estate at the date-of-death fair market value of $2,500 per share, should be sustained. Additionally, we note that in our prior opinion we pointed out that, even if we were to find that the buy-sell agreement continued beyond the decedent's revocation of the trust, we had doubts concerning the extent to which it remained in force at his death. Only agreements restricting transfers during life as well as transfers upon death may be effective for estate tax valuation purposes. See Estate of Littick v. Commissioner,31 T.C. 181, 185 (1958), and cases cited therein. See also United States v. Land,303 F. 2d 170 (5th Cir. 1962) *223 (restrictions on transfers of assets that expire at decedent's death cannot affect estate tax valuation). Our doubts stemmed from the decedent's bequest of all the Anderson stock that he owned at death to his two natural sons, without qualification and without any mention of a preexisting contract or resolution. We indicated that, if Lawrence and Richard took all 170 shares owned by decedent under the will (which included the unsold portion of the 84 shares he had withdrawn from the trust), "we could not ignore the probability of an effective extinguishment of an otherwise enforceable contract obligation of the decedent to his two natural sons." See Restatement, Contracts, secs. 416 and 451 (1932). See also, 5A Corbin on Contracts, sec. 1248 (1964). Petitioners objected to our comments in this regard because respondent had not presented the issue of extinguishment subsequent to the revocation of the trust for our consideration. Indeed, it was for this reason that we ordered our prior memorandum opinion withdrawn and set the case for further trial. The additional testimony confirms the validity of our previously expressed doubts. [11] Lawrence and Richard took all 170 Anderson *224 shares by bequest from the decedent and gave no consideration therefor to the estate. Thus, even if we were to accept petitioner's contentions regarding the continued effectiveness of the buy-sell agreement, the 40 shares that Lawrence and Richard would have had a right to purchase would have been free of any restrictions when decedent gratuitously transferred such shares to them at his death. As to the 20 shares that Horst might have been entitled to buy, the further trial revealed that, several months prior to the decedent's death, Horst agreed to leave the company and to sell all of his shareholdings therein and that he understood that he would not acquire any more Anderson stock. From Horst's testimony, we conclude that, even if the February 1, 1965, buy-sell agreement had survived revocation, as between the decedent and Horst, it was mutually abandoned several months prior to the decedent's death. The foregoing analysis provides a further ground for holding that respondent's determination should be sustained. *225 In view of our disposition of the factual issues relating to the lack of effectiveness of the February 1, 1965, buy-sell agreement at the time of decedent's death, we find it unnecessary to deal with respondent's argument on brief that, even though the $650-per-share price contained therein represented the fair market value of the Anderson stock at the time the agreement was executed, that agreement should nevertheless not be honored because it was executed with a view toward testamentary disposition of the anticipated enhancement in the value of such shares to the natural objects of decedent's bounty for less than adequate consideration in money or money's worth. See Estate of Reynolds v. Commissioner,55 T.C. 172, 194 (1970); section 20.2031-2(h), Estate Tax Regs. To permit a computation of attorney's fees and other expenses relating to this proceeding, Decision will be entered under Rule 155. Footnotes
1. The trust document reserved to the decedent the power to add additional property to the trust from time to time.↩
2. The record indicates that none of the certificates were ever so endorsed.↩
3. No signature was given on behalf of the company and the company was not a party to the agreement, although it was an anticipated party to the obligatory purchase-sale transactions addressed therein.↩
4. Since no assets of the trust were included in the estate tax return (see sections 2036 and 2038 of the Internal Revenue Code of 1954↩), we infer that decedent also withdrew the remainder of the corpus and revoked the trust.
5. There is no evidence of record as to whether the codicil was executed before or after the 1969 sales of four shares each.↩
6. The settlement also provided that each of the two other family-owned corporations would repurchase Horst's respective shareholdings therein at specified prices.↩
7. Petitioner has abandoned any contention that, if the contract price is not binding for estate tax valuation, date-of-death fair market value was less than $2,500 per share.↩
8. In our original memorandum opinion, we focussed on the question of the effect of the provision in the February 1, 1965, buy-sell agreement subjecting that agreement to whatever restrictions then existed in respect of the stock to be sold. See p. 6, supra↩. At the further trial, respondent stated that he was not relying on the impact of such provision and, accordingly, we consider it inappropriate to renew herein our previous analysis of this point.
9. Contrast this with the December 1, 1964, agreement between the decedent and the company, which specified both the total number of shares to be sold and the number of years the contract would be in effect.↩
10. There is no indication in the complaint or otherwise in the record herein that Horst was aware of decedent's revocation of the 1964 trust at the time of the filing of the complaint.↩
11. That respondent did not specifically raise this issue does not preclude us from considering it or even relying upon it as a ground for our decision. See Smith v. Commissioner,56 T.C. 263, 291↩, n. 17 (1971), and cases cited therein.