## JONES v. BERKEY.

1. VENDOR AND PURCHASER—BREACH OF CONTRACT—LAND CONTRACT —TIME.

Under a contract for the sale of land made by defendants, who had only a contract interest in the premises under a prior land contract, and accordingly provided for payments to be made by the vendee at the times when installments fell due upon the first contract, stipulating, moreover, that time should be of the very essence of the agreement, and that in the event of plaintiff's default, defendant could sell the property without incurring a liability for breach, defendant was entitled, after default and resale to a third person, to have a sufficient sum tendered to include necessary costs and expenses arising from the undisputed default; to offer merely the payment

provided for by the terms of the agreement was insufficient as foundation for an action for damages.

2. SAME—TIME AS OF ESSENCE—CONTRACTS.

While, as a general rule, time is not of the essence of a contract to pay money, though the time for payment be fixed, and a declaration of such intention is not conclusive, yet, where the requirement is reasonable, and the circumstances give occasion for it, the parties may properly stipulate that the provisions relative to the time of installments to be paid upon a land contract shall be of the essence.

3. SAME—PAYMENT—TENDER.

A party seeking relief against a forfeiture should tender sufficient to make the other party whole.

4. SAME—BREACH OF CONTRACT.

He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform.

Error to Kent; Brown, J. Submitted April 22, 1914. (Docket No. 109.) Decided July 24, 1914

Assumpsit in justice's court by Henry W. Jones and Daisy M. Jones against Charles H. Berkey for damages for breach of a contract for the sale of lands. From a judgment for defendant, plaintiffs appealed to the circuit court. Judgment for plaintiffs. Defendant brings error. Reversed; new trial denied.

*Taggart & Taggart,* for appellant.

*Fred P. Geib* and *William J. Landman,* for appellees.

STEERE, J. In this action plaintiffs recovered a verdict and judgment for $250 against defendant, in the Kent county circuit court, as damages for an alleged failure to convey to plaintiffs a certain 40 acres of land located near the city of Grand Rapids, in conformity with the provisions of a contract of purchase

and sale entered into between the parties on May 10, 1911. The agreement claimed to have been breached by defendant was the usual form of land contract, naming defendant as vendor and plaintiffs as vendees, parties of the first part and second part, respectively, describing the property, and stating the consideration to be $2,200, to be paid as follows: $679.33 on or before September 15, 1912; $380.67 on or before September 15, 1913, and the balance of $1,140 by assuming or paying a mortgage for that amount on said property "together with interest on the whole sum that shall be from time to time unpaid, at the rate of six per cent. per annum, to be computed from March 15, 1911, and to be paid semi-annually." Possession was given to the plaintiffs, who were required to keep all buildings on the premises in good repair and insured, and pay all taxes assessed against the property; defendant agreeing to give a good and sufficient warranty deed upon payment and performance of all conditions by plaintiffs. In case of default all payments made were to be forfeited as stipulated damages. The contract further provided that defendant at his option could, in case of default in any payment, declare all sums unpaid immediately due, and remove plaintiffs from said premises in the same manner as is provided by law for the removal of a tenant who holds over premises contrary to the terms of his lease. The concluding provisions are as follows:

"And it shall be lawful for the first party at any time after such default to sell and convey said premises, or any part thereof, to any other person, without becoming liable to refund any part of the money received on this contract, or for any damages on account of such sale. And it is hereby expressly understood and agreed that time shall be deemed as of the very essence of this contract, and that unless the same shall in all respects be complied with by second party at the respective times and in the manners above limited and specified second party shall lose and be de-

barred from all rights, remedies and actions both at law and in equity upon or under this contract."

On January 11, 1913, defendant served written notice of forfeiture of said contract, and demanded immediate possession of the premises by reason of plaintiffs having failed to make the first payment of $679.33, due September 15, 1912, as well as the interest which had fallen due upon said contract and taxes assessed against said property. On the trial it was shown that at the time said contract was entered into defendant held the property under a land contract from one Roos, and the payments to be made on this contract were timed to correspond with and meet those defendant was required to make on his contract with Roos. Plaintiffs took possession of the property under their contract and paid interest to September, 1911, part of it to defendant and part to Roos, one insurance premium, and interest due March, 1912. They paid no taxes, and defaulted in subsequent interest and payment due September 15, 1912, which was followed by defendant defaulting in the payments due Roos on his contract. Roos thereupon instituted proceedings against defendant and plaintiffs to forfeit his contract with defendant and recover possession of the property from plaintiffs, who held under defendant. These proceedings were continued from time to time, apparently according to an understanding between all parties in interest, and to give delinquents an opportunity to meet defaults, when finally defendant, unable as he states to otherwise obtain money to protect his contract, entered into an arrangement with one Connell to pay up what was due on defendant's contract to Roos and take a deed of the property, with an agreement to subsequently sell or allow it to be sold, if possible, for defendant's and plaintiffs' benefit, he to be reimbursed what he had paid Roos and $250, if he made the sale, or $150

if made by others, and what expenses he had incurred in the matter. On November 8, 1912, Connell paid Roos up, and obtained a deed of the property, subject to any interest which Berkey might have under his land contract. Plaintiffs denied any definite knowledge of or participation in this arrangement. Connell subsequently took possession of the property, finding it vacant as he claimed, but during plaintiffs' temporary absence as they claim. Shortly after Connell had paid up Roos and secured a deed of the property, negotiations were had between the parties relative to an adjustment, in which matters progressed to a point where the only difference between them was $161.61, which defendant claimed as a part of the expenses which he had been obliged to incur in saving the property through Connell, owing to plaintiffs' default in their payments. Plaintiffs refused to pay this, and insisted they were entitled to a clear deed from Berkey on payment of the balance due according to the terms of the contract. The matter of a tender of that amount, the computation of which was not in dispute, was proposed by a real estate agent named Sproat, who was then assisting plaintiffs in the matter and endeavoring to dispose of the property for them, and to whom they gave a power of attorney. Following the intimation that a tender would be made, defendant wrote a letter to Sproat, stating his position, and disposition to yet accept the amount specified in the contract with the actual costs and expenses which he had been obliged, owing to plaintiffs' default, to incur in the proceedings brought by Roos against plaintiffs and himself, including the amount he was compelled to pay Roos to settle the matter and obtain an extension of time, amounting in all to $161.61, concluding as follows:

"If you or Mr. Jones claim that I am not entitled to reimbursement for such costs, and that Mr. Jones'

rights under the contract has not expired by reason of the notice heretofore served, and you see fit to tender me the amount you and he claim due upon the contract, I will at such time consider whether to accept or refuse such tender, hereby expressly reserving my decision until tender be made. This is in no way to be construed as a waiver of my claim that the contract with Jones is terminated, or waiver of the notice heretofore served upon Mr. Jones in my behalf or that of Mr. Roos or Mr. Roos' assignee."

Later Sproat informed defendant over a telephone that he would not go to the trouble, annoyance, and expense of maturing arrangements to raise and tender the money due on the contract unless it would be accepted. Sproat testified that defendant answered that he would refuse to accept the tender unless the claimed expenses were included. Defendant admitted that he then declined to agree to accept a tender of the amount proposed, stating:

"And in answer to that I says we will settle the matter according to the written statement which was served."

Plaintiffs claimed and introduced testimony tending to show that the property was worth $3,000, a disputed question of fact, defendant showing that subsequent efforts to dispose of it resulted in a sale by Connell for $2,600, of which defendant received $307.94, being the balance remaining after payment of a mortgage owing on the property, and other charges, including Connell's commission and expenses in the matter.

Upon the question of tender, the court instructed the jury that defendant, by the admitted facts in the case, had waived his right to require a legal tender of the balance due from plaintiffs to him, and further charged the jury there were just two questions for them to consider: *First,* whether plaintiffs made a "demand upon defendant in good faith for a deed,"

offering to pay him the full amount then due upon the contract, and had "in good faith made provision and arrangement to have on hand, and produce the necessary money with which to pay the balance due on the contract;" that if the jury found "such demand upon defendant for a deed and proposal by plaintiffs to pay the balance due on the contract was in good faith made by plaintiffs, plaintiffs were then entitled to an offer of a deed by defendant as proposed in the contract, and to which plaintiffs would then be entitled upon the payment of the amount due under the contract;" and, *second,* if they found in favor of plaintiffs upon the first question, then how much, if any, damages they sustained, upon the measure of which instructions were given.

We do not regard it necessary in the disposition of this case to reach the assignments of error relative to admission or rejection of testimony or the charge of the court upon the subjects of tender and good faith. No tender was made, waived, or proposed of an amount beyond that computed by the terms of the contract which plaintiffs had breached. Under the undisputed evidence in this case no tender was sufficient which did not include the actual and necessary costs and expenses arising out of the legal proceeding brought by Roos, and which resulted from plaintiffs' default. It is true, as claimed, that they had no contract relations with Roos, but their contract with defendant was made with reference to his contract with Roos, as they were fully advised. Payments were timed to meet payments, time made of the essence of the contract with that in view, and it was expressly agreed that in case of default by plaintiffs defendant could otherwise dispose of the property without incurring any liability under their contract, and plaintiffs be thereafter debarred from all rights, remedies, and actions under the same. These plain and un-

ambiguous provisions were embodied in the contract for a manifest reason, under circumstances indicating that the contracting parties recognized and regarded them as essential. While as a general rule time is not of the essence of a contract to pay money though the time of payment be fixed, and is not necessarily made such by even so declaring it, yet where circumstances give occasion for it and the stipulation is reasonable, the contracting parties may, by clear terms, stipulate to make it so. *Richmond* v. *Robinson,* 12 Mich. 193.

"If time is of the essence, a performance after the time fixed does not bind the other party unless he waives the breach, and thereby, in effect, makes a new contract taking the place of the old one." Clarke on Contracts [2d Ed.], § 233.

While during an interval subsequent to plaintiffs' default conversations were often had involving demands for payment and negotiations for an adjustment, defendant consistently refused to recognize the contract defaulted as in force according to its strict terms, but, willing, and apparently anxious, to reach an agreement in the spirit of their original dealing, he repeatedly proposed a consummation of the matter agreeable to the terms of the old contract, but always with the modification that the additional expense plaintiffs' default had caused be added to the price, in effect making a new contract, "taking the place of the old one."

It is urged that the additional expense was incident to the Roos-Berkey contract; that there were no contract relations between plaintiffs and Roos, or Connell, and plaintiffs are not concerned with expenses defendant incurred with the latter by reason of his default. This entirely overlooks the relations of both contracts to the same property and the strict provisions of plaintiffs' contract as to time and terms of payment, understandingly made under known condi-

tions, to correspond in date and amount with the other. Those necessary expenses in relation to this property were manifestly suffered by defendant by reason of plaintiffs' default.

"Nothing short of an offer of everything that the creditor is entitled to receive is sufficient, and a debtor must at his peril tender the entire sum due, including all necessary expenses incurred or damages suffered by the creditor by reason of the default of the debtor." 38 Cyc. p. 137.

A party seeking relief against a forfeiture should tender sufficient to make the other party whole. *Stickney* v. *Parmenter*, 35 Mich. 237.

The general rule is well stated by Judge Sanborn in *National Surety Co.* v. *Long*, 125 Fed. 887, 60 C. C. A. 623, citing many authorities:

"He who commits the first substantial breach of a contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform."

In the instant case it is undisputed that plaintiffs first committed a substantial breach of the contract sued upon, recognized by the contracting parties in express terms as of such importance that, if committed, the opposite party should be free to at once sell the property contracted for without liability for damages, and plaintiffs be debarred from all remedies and actions. Following such breach, the only thing of legal significance claimed to have been done to heal it is a doubtful waiver of tender over a telephone in answer to an inquiry of plaintiffs' agent if defendant would accept the amount computed due by the strict terms of the contract, irrespective of any costs or damages resulting to defendant by reason of such breach. Following this plaintiffs rested on their claimed rights so established, and did nothing further towards performance.

We conclude, for the reasons stated, that under the

undisputed facts shown plaintiffs are precluded by the terms of this contract, which they first breached, from maintaining this action, and a verdict should have been directed in favor of defendant.

The judgment is reversed, and no new trial granted.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.