NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0185n.06
Filed: March 9, 2009

No. 07-2416

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| CONVERGE, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TOPY AMERICA, INC., | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  DAUGHTREY and McKEAGUE, Circuit Judges; VAN TATENHOVE,* District Judge.

**PER CURIAM.**   The litigation in this case arises directly from a settlement agreement entered into by the parties, plaintiff Converge, Inc., and defendant Topy America, Inc., and indirectly from a contract under which Converge was to provide consulting services to Topy America and to solicit sales orders for the steel and aluminum wheels that Topy America produced for use in the automotive industry.  The consulting agreement also contemplated that if Converge secured orders from two particular automotive companies, Ford Motor Company and Daimler Chrysler, Topy America would

---

*The Hon. Gregory Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

pay Converge additional fees. Although Converge procured orders from both companies, no fees were paid. As a result, Converge filed suit alleging breach of contract and claiming damages under theories of *quantum meruit* and estoppel. The district court dismissed the contract claim but allowed Converge to move forward with its *quantum meruit* and estoppel claims. The parties then entered into a settlement agreement purporting to resolve those claims and dismissing the underlying complaint. That settlement agreement forms the basis for the instant action, in which Converge claimed that Topy America underpaid commissions under the terms of the agreement because in calculating the amount due, it did not include certain "surcharges" paid by Ford Motor Company on orders obtained by Converge. In addition to alleging breach of contract, Converge also sought damages under the Michigan Sales Representative Commission Act, Michigan. Comp. Laws §600.2961, which permits the award of double damages to sales representatives whose commissions are withheld beyond the termination of a sales commission contract. Topy America counterclaimed for specific performance of a provision in the settlement agreement calling for the exchange of mutual releases. Upon cross-motions for summary judgment, the district court granted Converge's motion in full, finding that under the clear terms of the contract, Topy America had underpaid Converge and that Topy America was also liable for double damages under the Act. The district court also denied Topy America's cross-motion. Topy America now appeals both decisions of the district court.

We conclude that the district court was correct in holding that, under the terms of the settlement agreement, Topy America underpaid the commissions due. We also agree

that because Topy America was the first party to breach the underlying contract, Topy's cross -claim for specific performance was properly dismissed. We cannot agree, however, that the Michigan Sales Representative Commissions Act is applicable to the settlement agreement at issue in this case. For that reason, we affirm the district court's order in part, reverse in part, and remand for a recalculation of damages.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are not in dispute. The plaintiff, Converge, Inc., does business as a manufacturer's representative, procuring contracts with automobile manufacturers for companies like Topy America that supply the automobile industry. In 1998, Topy America and Converge entered into a consulting agreement that called for Topy America to pay Converge a monthly fee for its marketing services. The consulting agreement also provided that if, during its term, Topy America entered into sales contracts with either Daimler Chrysler or Ford Motor Company to supply wheels, Topy America would enter into a further "agreement with [Converge] to pay [Converge] a fee in such amount as [the parties] agree."

During the term of the consulting contract, Topy America secured sales contracts with both Chrysler and Ford, but no further agreement was made between Topy America and Converge regarding additional fees. Consequently, in 2004, Converge filed suit against Topy America seeking fees related to the Chrysler and Ford sales contracts and alleging breach of contract, estoppel, and *quantum meruit* theories of recovery. Topy

America filed a motion for summary judgment, and the district court granted it as to the contract claim, holding that the relevant portion of the consulting agreement was an unenforceable "agreement to agree," but the court allowed the *quantum meruit* and estoppel claims to proceed.

Converge and Topy America then successfully undertook to settle the remaining *quantum merit* and estoppel claims in an agreement approved by the district court. The settlement agreement provided, in relevant part, that:

> 1. The [underlying] case is dismissed with prejudice with each party to bear its own costs and expenses.
>
> 2. Written mutual releases of all claims related to the issues in this suit will be drafted and executed in good faith.
>
> 3. Defendant will pay Plaintiff a commission of one percent (1.0%) of gross sales on the sales of certain wheels during a certain time period as follows:
>
> >    a. The time period begins in 2003 at the inception of the Defendant's provision of wheels to Ford (FMC) and Daimler Chyrsler (DCX).
> >
> >    . . .
> >
> >    e. As to both FMC and DCX wheels:
> >
> > >      i. *The gross sales price upon which the commission is calculated shall be measured by the price of the "base steel wheel" sold . . . .*
> >
> >    . . .
>
> 9. This agreement supercedes all earlier commission agreements or arrangements between the parties.

(Emphasis added.) As a result of the settlement agreement and in the absence of any objection to it, the district court dismissed the underlying suit.

- 4 -

Subsequently, the parties exchanged communications regarding the mutual releases contemplated by the settlement agreement and, in connection with the releases, they also exchanged drafts of a more detailed settlement agreement. Topy America also paid Converge what Topy America deemed to be the full amount of "past due" commissions. The payment, however, was less than Converge thought was correct under the terms of the settlement agreement and, as a result, the parties never executed mutual releases or further executed an additional settlement agreement. Instead, after some back-and-forth communication regarding the amount of the "past due" payment, Converge filed the instant suit against Topy America alleging breach of the settlement agreement, as well as a statutory claim under the Michigan Sales Representative Commission Act, Michigan. Comp. Laws § 600.2961, which provides special protections, including double damages, to sales representatives seeking to collect commissions from a principal.

The parties' dispute relates to whether or not certain payments that Ford Motor Company made to Topy America to compensate Topy America for a market increase in the price of steel should be calculated into the commissions called for under the settlement agreement. In 2004 and 2005, a general market increase in the price of steel, the major component of Topy America's wheels, caused the company to seek increased compensation from Chrysler and Ford. Both customers agreed to pay the additional cost but, initially, they structured the increased payments differently. Chrysler incorporated the cost of the supplements into the contract price for the base steel wheel, while Ford simply paid Topy America a lump sum in the form of a "surcharge" but did not increase the per-

piece contract price. In 2007, Ford changed its method of payment to mirror Chryslers's, *i.e.*, instead of a surcharge, Ford increased the per piece contract price for the base steel wheel.

Topy America and Converge agree that the "commission of one percent (1.0%) of gross sales on the sales of certain wheels" specified in the settlement agreement included the per-piece increase in the contract price set by Chrysler and, starting in 2007, by Ford, but they disagree as to whether the surcharges Ford paid in 2005 and 2006 should be included in the calculation of the commissions. Converge contends that the surcharge is part of the "gross sales" for the wheels and therefore should be included, whereas Topy America contends that such a reading is precluded by the provision of the settlement agreement that "[t]he gross sales price upon which the commission is calculated shall be measured by the price of the 'base steel wheel' sold." According to Converge's calculation, the actual amount in dispute (excluding damages under the Michigan Sales Representative Commission Act and attorneys' fees, costs, and interest) is $ 60,303.78.

In response to Converge's complaint, Topy America filed a counterclaim seeking a declaration of rights as to amounts due under the settlement agreement and specific performance of the provision calling for the exchange of mutual releases. Upon cross-motions for summary judgment, the district court granted summary judgment to Converge and denied summary judgment to Topy America. The court held that under the clear terms of the settlement agreement, the Ford surcharges should be included in the "gross sales"

calculation. The court further held that the Michigan Sales Representative Commission

Act was applicable to the settlement agreement and that Converge was due to collect

damages under the Act in twice the amount of commissions owed or $100,000, whichever

was less, as well as attorneys' fees and costs. Topy America now appeals that decision.

## DISCUSSION

We review a district court's grant of summary judgment *de novo*.[1] *See Michigan Bell*

*Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 339 F.3d 428, 433 (6th Cir. 2003). Summary

judgment is appropriate where "there is no genuine issue as to any material fact and ... the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[1] Although the district court clearly decided the instant case on cross-motions for summary judgment, Converge urges this court to review the decision for abuse of discretion, pointing to our decision in *Therma-Scan v. Thermoscan*, 217 F.3d 414 (6th Cir. 2000). In *Therma-Scan*, the parties to a trademark infringement suit came to a verbal agreement settling the case at the urging of the district judge presiding over the case. *See* 217 F.3d at 416-418. After the parties informed the judge of the agreement, the judge orally outlined the agreement on the record and directed the parties to formalize the agreement in writing. *See id.* But, when the parties attempted to reduce the agreement to writing, they were unable to agree on the terms. *See id.* Upon a motion to enforce the settlement agreement, the district judge granted the motion, forced the objecting party to sign a written agreement that it contended was not representative of its understanding of the verbal agreement, and dismissed the trademark infringement suit with prejudice. *See id.* We reviewed the district court's decision for an abuse of discretion and reversed. *See id.* at 421.

Thus, the procedural posture of *Therma-Scan* is clearly distinguishable from the instant case. The decision at issue there was upon a motion for enforcement of a settlement agreement made within the context of the original suit that gave rise to the settlement. By contrast, the decision here was in response to a motion for summary judgment in a breach of contract suit separate from the suit that gave rise to the settlement agreement at issue. There simply is no question that the correct standard of review in this case is the same as that for any grant of summary judgment – *de novo*.

The district court succinctly summarized the law governing interpretation of the settlement agreement, as follows:

> Under Michigan law, which the parties have agreed governs the instant dispute, "[a]n agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v. Domino's Pizza L.L.C.*, 273 Mich. App. 449, 452 (2006). "The primary goal of contract interpretation is to honor the intent of the parties." *Old Kent Bank v. Sobczak*, 243 Mich. App. 57, 63 (2000). This entails a reading of the contract as a whole and an application of its clear language. *Id.* "If the provision is clear and unambiguous, the terms are to be taken and understood in their plain, ordinary, and popular sense." *Michigan Mut. Ins. Co. v. Dowell*, 204 Mich. App. 81, 87 (1994). "Courts are governed by what the parties said and did, and not merely by their unexpressed subjective intent." *Fletcher v. Bd. of Educ. of Sch. Dist. Fractional No. 5*, 323 Mich. 343, 348 (1948).

We agree with the district court's conclusion that, on its face, the language of the contract is unambiguous and allows for the inclusion of the Ford surcharge payments for steel in the calculation of the "commission of 1% of the gross sales of certain wheels," measured by the "price of the base steel wheel sold." As the district court explained, the ordinary meaning of "gross sales" is *total* sales. BLACK'S LAW DICTIONARY (8th ed. 2004). Nevertheless, Topy America insists on appeal that the caveat that "[t]he gross sales price upon which the commission is calculated shall be measured by the price of the 'base steel wheel' sold" modifies the common definition of gross sales such that the per piece price governs. We find this argument unpersuasive. The "price" of the "'base steel wheel' sold" is not limited to the per-piece price alone. On the contrary, "price" is generally defined as "the amount of money or other consideration asked for or given in exchange for something

else." Black's Law Dictionary (8th ed. 2004).[2] Here, the Ford surcharge payments fit easily into this definition – the surcharges are part of the amount of money that was asked for and given in exchange for the base steel wheels. This conclusion is underscored by the inclusion of the word "sold." The price of the wheel that was in fact sold to Ford certainly includes the surcharges negotiated in order to compensate Topy America for the increased price of the steel used in the manufacture of the wheels.

Topy America points to extrinsic evidence that, it argues, tends to show that at the time the settlement was agreed upon, "price" was understood by the parties to be limited to the per-piece price. We conclude, however, that the district court was correct in holding that because this evidence would contradict the clear terms of the contract, specifically by narrowing the broad terms "gross sales" and "price" to the much narrower term "piece price," it is barred by the parol evidence rule. *See UAW-GM Human Resource Center v. KSL Recreation Corp.*, 579 N.W.2d 411, 414 (Mich. App. 1998) ("The parol evidence rule may be summarized as follows: parol evidence of contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, is not admissible

---

[2] Topy America argues that referencing dictionary definitions is improper, but it is clear that a court may refer to a dictionary to ascertain the ordinary meaning of a term. *See Cole v. Auto-Owners Ins. Co.*, 723 N.W. 2d 922, 924 (Mich. App. 2006) ("Unless otherwise defined, contractual language is given its plain and ordinary meaning. To determine the ordinary meaning of a term, [the court] may refer to a dictionary.").

to vary a contract which is clear and unambiguous.") (internal quotations, citation and alteration omitted).[3]

## III.  Michigan Sales Representative Commission Act

The Michigan Sales Representative Commission Act reads in relevant part:

(1) As used in this section:

(a) "Commission" means compensation accruing to a sales representative for payment by a principal, the rate of which is expressed as a percentage of the amount of orders or sales or as a percentage of the dollar amount of profits.

. . .

(d) "Principal" means a person that does either of the following:

> *(i)* Manufacturers, produces, imports, sells or distributes a product in this state.
>
> *(l)* Contracts with a sales representative to solicit orders for or sell a product in this state.

---

[3] The defendant's reliance on the Michigan Supreme Court's somewhat relaxed application of the parol evidence rule in *Goodwin, Inc. v. Coe*, 220 N.W.2d 664, 671 (Mich.), *vacated in part on other grounds*, 224 N.W.2d 53 (Mich. 1974) ("Where an ambiguity may exist in a contract, extrinsic evidence is admissible to prove the existence of an ambiguity."), is unavailing.  In *Union Oil Company v. Newton*, 245 N.W. 2d 11, 12 (Mich. 1976), the Michigan Supreme Court retreated from its broad ruling in *Goodwin* by holding that when facing a parol evidence issue, "the real question is whether the proffered parol evidence is inconsistent with the written language.  If there is no inconsistency, the parol evidence is admissible."  *See also Michigan Nat'l. Bank of Detroit v. Holland-Dozier-Holland Sound Studios*, 250 N.W.2d 532, 533 (Mich. App. 1977) (observing that *Newton* is a "surreptitious reversal" of *Goodwin*); *County of Oakland v. City of Detroit*, 265 N.W.2d 130, 134 (Mich. App. 1978) (same).  The Michigan courts later explained that by "inconsistent" the *Newton* court meant "contradictory."  *See Michigan Nat'l. Bank*, 250 N.W.2d at 534.

(e) "Sales representative" means a person who contracts with or is employed by a principal for the solicitation of orders or sale of goods and is paid, in whole or in part, by commission . . . .

(2) The terms of the contract between the principal and sales representative shall determine when a commission becomes due.. . .

(4) All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due.

(5) A principal who fails to comply with this section is liable to the sales representative for both of the following:

> (a) Actual damages caused by the failure to pay the commissions when due.

> (b) If the principal is found to have intentionally failed to pay the commission when due, an amount equal to 2 times the amount of commissions due but not paid as required by this section or $100,000.00, whichever is less.

(6) If a sales representative brings a cause of action pursuant to this section, the court shall award to the prevailing party reasonable attorney fees and court costs . . . .

Michigan. Comp. Laws § 600.2961.

The district court reasoned that the statute was applicable to the case at hand because, in the underlying lawsuit, "Plaintiff and Defendant enjoyed a sales representative/principal relationship" and "the parties were contemplating entering into a commission agreement to satisfy the 'agreement to agree' provision in the original contract" and, also, because the settlement agreement, an outgrowth of the *quantum meruit* claim

remaining from the original lawsuit, provided for specific commission rates and timetables for past and future sales resulting from Converge's solicitation work.

On appeal, Topy America strenuously challenges this conclusion, based on four arguments. First, it contends that under the express terms of the statute, the Act is inapplicable in this case because the settlement agreement is not a contract employing Converge to solicit orders or sell products but, instead, is a settlement of past litigation in which the amount of the settlement happens to be expressed as a commission. As a result, Topy America contends, there is no principal/sales representative relationship between the parties. Second, the defendant argues that the underlying contract has no import in the analysis, both because the court has already held that the only contractual provision arguably relating to commissions is an unenforceable agreement to agree and because the settlement agreement specifically indicates that it supercedes all previous agreements. Third, Topy America asserts that even if there was a principal/sales representative relationship created in the original contract, the Act is inapplicable because it applies only when commissions remain unpaid at the "termination" of the contract, and the settlement agreement has not "terminated." Finally, Topy America makes a policy argument, contending that the application of the Act to the instant case is inconsistent with a policy encouraging settlements.

The application of the statute to a settlement agreement of the type at issue here is a novel situation and, therefore, there is no controlling case law from the Michigan courts

upon which to rely in our review of the district court's ruling on this issue. However, we agree with the defendant that the district court's consideration of the parties' past contract was unjustified, given that the settlement agreement specifically "supercede[d]" the original contract. Moreover, because the district court held that commissions were *not* due under the terms of the original contract, it was error to rely on the original contract for the finding that Converge is a "sales representative" within the meaning of the statute, *i.e.,* one who is "paid, in whole or in part, by commission." Mich. Comp. Laws § 600.2961(1)(e).

Likewise, we find no basis for applying the Act to the settlement agreement, because the statute clearly contemplates a contract that sets up a principal/sales representative relationship and defines when commissions are due and in what amounts. In contrast, the settlement agreement here has an entirely different purpose: specifically, to settle a *quantum meruit* claim without the need for further litigation. Because the *quantum meruit* claim is based on Converge's solicitation of sales on behalf of Topy America, and because the settlement amount is expressed in terms of a commission, there may appear to be an overlap between the terms of the settlement agreement and the type of contract contemplated in the statute. But the distinctions between the two create an uneasy, if not impossible, fit between the terms of the settlement agreement and the statutory language.

The most obvious example of this misfit is the statutory requirement that "[a]ll commissions that are due at the time of termination of a contract between a sales

representative and principal shall be paid within 45 days after the date of termination."
Mich. Comp. Laws § 600.2961(4). One does not speak of a "termination" in connection
with a settlement agreement precisely because it is not the type of contract contemplated
by the statute. In addition, the terms of the settlement agreement do not clearly establish
that Converge is a "sales representative," that is, one who is paid for his work by
commission. Mich. Comp. Laws § 600.2961(1)(e). Although there are "commissions" due
Converge under the settlement agreement, they are not, strictly speaking, in payment for
the successful solicitation of orders but as the *quid pro quo* for settlement of the lawsuit.
Hence, based on the plain language of the Act and in the absence of any authority for the
proposition that the Michigan legislature intended the Act to apply to such instruments as
a court-approved settlement agreement, we conclude that the district court erred in its
determination that Topy America was liable under the Act and reverse that portion of the
court's judgment.

**IV. Cross-Claim**

Finally, Topy America contends that the district court erred in failing to address its
counterclaim for specific performance of the exchange of mutual releases under the
settlement agreement. But, because we have found that Topy America had wrongfully
withheld payment due to Converge under the terms of the settlement agreement, clearly
there is no basis upon which Topy America can pursue its claim for specific performance
of the agreement. *See Jones v. Berkey*, 148 N.W. 375, 378 (Mich. 1914) ("He who

commits the first substantial breach of contract cannot maintain an action against the other contracting party for a subsequent failure on his part to perform."). Thus, there was no error in the district court's omission of a ruling on this claim.

## CONCLUSION

For the reasons set out above, we VACATE the order of the district court, entered on October 30, 2007, awarding attorneys' fees and costs in favor of Converge; we AFFIRM in part and REVERSE in part the judgment entered by the court on October 7, 2007; and we REMAND for a redetermination of the damages awarded in Converge's favor.